Honsee v. Hammond.

A new trial should be denied, with costs.

[ALBANY GENERAL TERM, May 5, 1862. *Hogeboom, Peckham* and *Miller*, Justices.]

————————◆————————

HONSEE *vs.* HAMMOND and others.

39    89
62h   314

One in possession of land, under a contract to purchase, and entitled to a conveyance upon making the payments required, is virtually the owner, and may maintain an action to recover damages for injuries to his interest in the property, incurred while he was in the actual occupation and possession of the premises.

In such an action, evidence of the value of the premises, and of the cost of the buildings erected thereon, is competent for the purpose of showing the situation of the property, and the surrounding circumstances.

In such an action it is entirely competent for the plaintiff to prove the difference in the annual value of the property prior to, and since, the injury alleged, within the rule laid down by the authorities respecting opinions of witnesses.

The difference in the value of the property, at the two periods, is the proper rule of damages.

Riparian owners have no right to use their privileges in any way to the detriment of a proprietor on the stream below them. Although they have a right to use the water for all legitimate and proper purposes, they are not authorized to injure the owner below them, or in any way to interfere with his privileges.

Accordingly, where the owners of a tannery situated upon a stream threw tan-bark and other materials into the stream, thereby clogging the same and causing damage to the mills of the plaintiff situated lower down the stream;

*Held* that an action would lie for the injury, even though the damage was done by the defendants without any intent to injure, and in the usual manner in which water is used in tanneries.

APPEAL from a judgment entered upon a decision at circuit, and motion for new trial upon exceptions. The cause was tried before Justice Hogeboom and a jury, at the Sullivan circuit, in September, 1860. The action was brought to recover damages for injuries charged in the complaint and alleged to have resulted to the plaintiff from the wrongful acts of the defendant and his workmen, in throwing tan-bark and other materials into the stream upon which the plaintiff had a dam, saw-mill, turning mill, &c. The answer denies the allegations in the complaint, as to the ownership of the premises alleged to be owned by the plaintiff, and on which the saw-mill was built. The answer also sets up that the defendants own a tannery on the same stream, which was in operation before the saw-mill was built; and alleges that if in the ordinary business of the tannery, any bark was taken down the stream and lodged in the plaintiff's dam, it was a benefit to the same in tightening his dam.

It appeared upon the trial that the plaintiff was the owner and in possession of a valuable farm of land in the town of Neversink, Sullivan county, upon which were dwelling houses, barns and out-buildings, used for agricultural purposes. There were also on this farm a mill pond, a valuable saw-mill, turning mill and machinery, supplied with water through a race-way from the Neversink river, which ran through the farm of the plaintiff, and in which was a brush dam on the plaintiff's land, by means of which the water was turned into the mill-race and taken to the pond. Higher up, upon the same stream (about one-fourth of a mile) the defendants have erected and operate a tannery for manufacturing leather. From this tannery they threw into the stream their tan-bark, together with portions of the hair, skimmings, filth and refuse matter from their hides, which float directly down the stream into the mill-pond, saw-mill and machinery of the plaintiff.

This practice was continued for some time, greatly impairing the working and usefulness of the plaintiff's mills, until it greatly injured the value of the mills.   The plaintiff claimed to recover for the injury to the *freehold*, as well as for the injury to his possession, for the period occupied and used by him.   The plaintiff proved his title and occupancy and possession for many years in the grantors of John Pierce, his immediate grantor.   The sale to the plaintiff was by a contract or executory agreement, under which the plaintiff held and occupied until the commencement of this action, and in the mean time made payments and put up and erected permanent and valuable improvements, and cleared off and cultivated a large portion of the farm.   From the year 1854 to the commencement of this action the plaintiff contracted to sell the saw-mill to different persons, each of whom took possession and commenced the manufacture of lumber.   Each of the parties in turn threw up their contracts, and the mills came back upon the hands of the plaintiff.   The plaintiff himself used the mills (exclusive of the periods when they were held under contract) about one year and four months, and his recovery was limited by the rulings of the court to the injury to his possession during this period.   The mill and tannery were built about the same time.

The cause was then submitted to the jury under charge of the judge.   The defendant's counsel asked the court to charge, that an action could not be maintained for throwing spent tan-bark into the river, when it was done without intent to injure, and in the usual manner in which the water was used at tanneries.   The court refused to charge in this unqualified manner, and the defendant excepted.   So far as this proposition involved questions of fact the court referred the same to the jury, and as to the questions of law referred the jury to the charge, to which the defendants excepted.   The jury found a verdict in favor of the plaintiff for $100.   The other questions arising on the trial appear in the opinion of the court.

A motion for a new trial was made and denied *pro forma* at special term, and judgment having been rendered on the verdict, an appeal was taken to the general term.

*A. J. Parker*, for the appellant and plaintiff.

*H. R. Low*, for the respondent and defendant.

*By the Court*, MILLER, J.  The defendants interpose several objections to the decisions of the judge upon the trial.

*First.* It is contended that the plaintiff was not proved to be the owner of the premises, at the time of the alleged injury, as claimed in his complaint, and that he should have been nonsuited upon that ground.  The plaintiff alleged that he was the owner and in lawful possession of the premises.  The evidence showed that he had an agreement for the purchase of the property, and had taken and held possession by virtue of this and another agreement for some time prior to the commencement of the suit.  That payments were made to his grantor, on his contract, and the property conveyed to him by deed, about the time of the trial.  The plaintiff was virtually the owner of the premises.  He was in possession exercising acts of ownership, and was entitled to a conveyance upon making the payments required.  The damages incurred were sustained by him.  The original grantor had sustained no loss.  The injury was to the plaintiff alone.  He had made large improvements on the property, and was seriously injured by the acts of the defendants.  He was only allowed to recover for injuries to his interest while in the actual occupation and possession of the premises.  As the possessor of the premises he was entitled to maintain the action. (2 *Greenl. Ev.* § 618.  1 *Ch. Pl.* 71.  *Rathbone* v. *McConnell, &c.* 20 *Barb.* 311, 315.)

It is unnecessary to inquire whether as the holder of an executory contract he was entitled to recover for an injury to the freehold.  It is sufficient that he had made out a case

upon which to go to the jury, and, as the actual occupant and possessor, had been damaged. The judge was clearly right in refusing to nonsuit.

*Second.* I think the evidence of the value of the premises, and of the cost of the several buildings erected thereon, was competent for the purpose of showing the situation of the property and the surrounding circumstances. It was establishing the facts relating to the character of the property, which, in connection with other evidence, might tend to show how much injury might have accrued, to the plaintiff. The value of the property was alleged in the complaint, and the evidence introduced sustained this allegation.

*Third.* The objections made to the evidence of John Decker, as to the injury and inconvenience sustained for two weeks after the witness had taken possession of the premises as a purchaser, are not well founded. The testimony had a bearing upon the question of damages. The plaintiff had been in possession of the premises immediately preceding the time when the witness entered, and it was competent to show the effect of the injury and the condition of the premises not only when the witness took possession, but within a reasonable time thereafter, for the purpose of giving point to and characterizing the other evidence upon this subject. It showed the general condition of the property at and about the time when the injury was caused, and ranging through the period for which the plaintiff claimed to recover damages. It is claimed that the jury could give no damages for this period, and had no right to infer that the plaintiff suffered the same damages during any other two weeks when the plaintiff was in possession. The evidence was not offered or received for any such purpose, and the damages were especially restricted by the charge of the judge to injuries resulting to the plaintiff's possession of the property while it was actually occupied by him. The objection to the evidence of E. L. Briggs involves very much the same question, and the same remarks are applicable. His evidence as to the condition of the prop-

Honsee v. Hammond.

erty was confined by the judge to the time and immediately after the witness took possession, and the testimony was admitted as proper and competent for the purpose of showing the condition of the mill while in the possession of the plaintiff.

*Fourth.* The questions put to the plaintiff, who was examined as a witness on his own behalf, involve a more important and a more serious inquiry. He was first asked what the mill was worth annually. This was objected to because it called for an answer which was immaterial, and also as an improper rule of damages. The objection being overruled, the witness answered, it was worth one hundred dollars annually. The question was then put, What was its value as obstructed by tan-bark? The same objections were made to this as to the previous question, with an additional one, that there was no proof how much of the loss, if any, was chargeable to the defendants. The specific objection was not taken that the question called for the opinion of the witness; nor was it a distinct question as to the damages, within the principle laid down in *Dolittle* v. *Eddy,* (7 *Barb.* 74.)

Even if it did come within this rule, there is a distinction between an opinion based upon facts within the witness' own knowledge, and an opinion predicated upon the testimony of other witnesses. (*Spencer* v. *The Saratoga and Washington R. R. Co.,* 12 *Barb.* 382. *The Rochester and Syracuse R. R. Co.* v. *Budlong,* 10 *How.* 289.) I am inclined to think that it was entirely competent to prove the difference in the annual value of the property prior to and since the injury alleged, within the rule laid down by the authorities as to opinions. As to the objections actually made, (1.) It was material to show the difference in the value for which the plaintiff claimed to recover damages. (2.) The effect of the evidence was to prove what damages the plaintiff had actually suffered. The difference in the value would establish the amount of damages, and I think was the proper rule of damages. (3.) If there is any evidence showing that any portion of the injury had been caused by others, then the evi-

dence offered was of a character which tended to throw light upon the question of damages. It was in fact one way of ascertaining what the damages actually were and of submitting what amount, if any, the jury should award to the plaintiff under the evidence presented for their consideration, and the circumstances of the case.

*Fifth.* The evidence offered to be given by Henry Beardslee, that when he was in possession of the mill, the tan was a benefit rather than an injury, was properly rejected. (1.) It was too remote, being after the commencement of the suit, and some time after the injury accrued. (2.) It would be a mere matter of opinion upon facts existing at a different time from that when the damages were incurred. (3.) If it was competent in reference to the original period, it was not in regard to a subsequent time.

*Sixth.* I think the case was properly submitted by the judge to the jury, and there was no error in refusing to charge as requested by the defendants' counsel. The defendants were clearly liable for the injury, although the damages may have been done by them without any intent to injure. They had no right as riparian owners to use their privilege in any way to the detriment of a proprietor below them. Although they had a right to use the water for all legitimate and proper purposes, they were not authorized to injure the owner on the stream below, or in any way to interfere with his privileges. The maxim " *sic utere tuo ut alienum non lædas*" applies, and the judge very properly refused to charge as requested. (*Broom's Legal Maxims,* 277. *Thomas* v. *Brackney,* 17 *Barb.* 654.) The charge of the judge fully embraced the principles above laid down, and he very properly refused to charge that the action could not be maintained for throwing tan-bark into the river when it was done without intent to injure, and in the usual manner in which the water was used in the tanneries. The judge had previously charged that both parties had a right to the use of the water for all legitimate purposes; but that one riparian proprietor had no right so

Honsee *v.* Hammond.

to use the water as to fill or clog it with foreign and noxious matter which would materially interfere with the use of the water below, and to the damage and injury of the owner, and thereby greatly impair or destroy the use of the property. The principle laid down was clearly correct, and the ruling of the judge in refusing to charge was entirely proper.

*Finally.* It cannot, I think, be fairly claimed that the verdict is against the evidence. The evidence is at least so far conflicting as to render it improper to interfere. The verdict must be entirely against the weight of evidence, to justify an appellate tribunal in setting it aside. The jury, whose province it was to weigh and pass upon the evidence, have decided that the preponderance was against the defendants. (*Culver* v. *Avery,* 7 *Wend.* 380.) A new trial will not be granted where the testimony is contradictory, and the character and credit of the witnesses questioned, on the ground that the verdict is against the weight of evidence. (*Winchell* v. *Latham,* 6 *Cowen,* 682.) There is certainly no such preponderance in the weight of the evidence as would authorize a new trial on that ground. The jury have decided the questions of fact in favor of the plaintiff, and there is no rule of law which allows us to interfere with, or to set aside, their verdict.

In view of all the facts and the questions raised, a new trial must be denied, and the judgment below affirmed with costs.

[ALBANY GENERAL TERM, May 5, 1862. *Hogeboom, Peckham* and *Miller,* Justices.]