MARY J. JOHNSON, RESPONDENT, *v.* THE NEW YORK BOWERY FIRE INSURANCE COMPANY, APPELLANT.

*Policy of insurance against fire — when the premises are not vacant or unoccupied within the meaning of it.*

In this action, brought upon a policy of insurance to recover the value of furniture and other property destroyed by fire, the defendant claimed that the policy had been invalidated by reason of the premises having become vacant or unoccupied in violation of a condition of the policy. The evidence showed that the plaintiff and her husband and family occupied the premises as a dwelling-house; that a week or two before the fire they left the house to visit friends, leaving no one there; that during that time the husband came back and stayed in the house over night on two occasions; that he and a Mr. Gray stayed there on the night of the fire. All the furniture was left in the house. When leaving the house the plaintiff took a satchel, a night dress for herself and one shirt for her boy, all the rest of her clothes were left in the house.

*Held,* that the house was not "vacant or unoccupied" within the meaning of those terms as used in the policy.

APPEAL from a judgment in favor of the plaintiff, entered upon the verdict of a jury at the Herkimer circuit, and from an order denying a motion for a new trial made upon the minutes of the justice before whom the action was tried.

*Pomeroy & Townsend,* for the appellant.

*Goodyear & Wolcott,* for the respondent.

KENNEDY, J.:

Action to recover upon a policy of insurance issued by the defendant upon the household furniture and other property of the plaintiff destroyed by fire during the continuance of the policy and on the sixth day of March, 1882. On the trial the plaintiff recovered.

The defendant moved for a new trial upon the minutes, upon

exceptions taken, and because the damages were excessive and contrary to the law and evidence. The motion was denied. A judgment was entered upon the verdict and from that order and judgment this appeal is taken.

On the trial it appeared that the house in which the furniture, claimed to have been destroyed, was contained, was known as the Lake House, in the village of Frankfort. Previous to the fall of 1881, the plaintiff had occupied and conducted a public house in the same village known as the Brunswick, and moved from there to the Lake House; and the furniture and property claimed to have been burned, were moved from the former to the latter and was afterwards insured by the policy in question. One of the questions raised by the defendant on the trial was that the property set out in the proof of loss furnished to the defendant was not destroyed, and that such proof was therefore fraudulent. The plaintiff gave evidence tending to show that all the property mentioned in said proof of loss was in the house at the time of the fire and was burned; and that a considerable portion thereof was stored in a room designated as the "ball room." Several witnesses were called by the plaintiff, who gave evidence to that effect. The defendant on its part called other persons who were at the fire and who testified that all the property claimed to be, was not in said room. The question was one of fact and especially for the jury. We cannot say that the evidence by the defendant was of that convincing character, as in effect to overcome that given by the plaintiff; or that the jury were not justified upon the whole case in finding the issue in the plaintiff's favor. (*Honsee* v. *Hammond*, 39 Barb., 89, 96.)

The testimony of Mary Cheesborough was competent and admissible as tending to show the articles of furniture in the kitchen of the Lake House previous to, but not remote from the time of the fire, as confirmatory, so far as it had that effect, of other witnesses, who testified that like articles were in the same room at the time the fire occurred.

The policy contained the following provision, which is a part of the contract: "This policy shall become void unless consent in writing is indorsed by the company hereon, if the building herein described be or become vacant or unoccupied for the purposes indicated in this contract."

The evidence bearing upon the question as to whether the house burned was unoccupied at the time of the fire, is that of Charles Johnson, the husband of the plaintiff, who testifies that he occupied it as a dwelling for himself and family from the fall of 1881. A week or two before the fire he and his family left the house to visit friends at Oriskany, leaving no one there. That during that time he came back and stayed in the house over night on two occasions; and he and Mr. Gray stayed there on the night of the fire. All the furniture was left in the house. The plaintiff also testified: "We left the house a week or ten days before the fire; husband left with me; boy had gone before; Eugene Clark was in the house when I and my husband left; he left at the time we did; I was away about ten days before the fire; when I went away the house was locked up; no one there during the ten days the house was unoccupied, so far as I know; when I went away I took my satchel and one shirt for my boy, night dress for self; nothing else except clothes I had on; the balance of my wardrobe was at the head of the stairs in the clothes-press at the Lake House.

" Cross-examined — I stayed away a week or ten days; think it was ten days, and all I took was the night dress for the ten days.

" Direct — I was gone longer than I intended when I left home; when Mr. Johnson went back I did not send for any more clothing, because I was going home the next day; I had to go home the next day."

The house was not vacant; all the furniture therein was left there, and it was being used. (*Herrman* v. *The Merchants' Ins. Co.*, 81 N. Y., 124.)

The evidence upon the question of its actual occupancy tends to show, and the jury properly found, that the absence of the plaintiff and her family was temporary, and simply for the purpose of paying a visit. During the eight or ten days the visit was prolonged the husband of the plaintiff returned on two occasions and occupied the house for the night.

To render the dwelling occupied within the correct interpretation of the contract, there must be in it the presence of human beings, as at their customary place of abode; not absolutely and uninterruptedly continuous, but that must be the place of usual return and habitual stoppage. (*Herrman* v. *The Adriatic Fire Ins. Co.*, 85 N. Y., 169.)

The family had been absent a week or ten days.   The day of the night of the fire the husband returned and occupied the house, and his wife, the plaintiff, expected to return the next day.   The house was occupied in fact at the time of the fire.   In *Paine* v. *The Agricultural Insurance Company* (5 Thomp. & Cook, 619), at 620, MULLEN J., says: " Occupation of a dwelling-house is living in it, not mere supervision over it.   It is not necessary that some persons should live in it at every moment during the life of a policy, containing such a provision as is contained in the policy before us, but there must not be a cessation of occupancy for any considerable portion of time.   For what length of time it may remain unoccupied will depend upon the circumstances of each case, and the jury or the referee must determine the question in view of the consideration that led to the incorporation of the provision into the policy, and the necessity that not unfrequently arises for persons insured to leave temporarily their dwelling-houses.   ( *Wait* v. *The Agricultural Ins. Co.*, Sup. Ct. R. [13 Hun], 371, 374; *Cummins* v. *The Agricultural Ins. Co.*, 67 N. Y., 263.)   Upon this branch of the case we think the question properly disposed of.

We do not think any error was committed in excluding the evidence of Thomas Honohon, offered by the defendant for the purpose of explaining the certificate given by him to the insured, and forming a part of her proof of loss, with a view of explaining the conflict between that and the evidence given by him upon the trial.   The question is not within the rule that a witness may explain statements made by him conflicting with the evidence he gives and offered with a view to impair his testimony.   For the purpose for which it was given. the certificate is conclusive.

The judgment and order should be affirmed, with costs.

HARDIN, P. J., and FOLLETT, J., concurred.

Judgment and order affirmed, with costs.