(59 App. Div. 30.)

BUTLER et al. v. VILLAGE OF WHITE PLAINS.

(Supreme Court, Appellate Division, Second Department. March 8, 1901.)

1. WATER COURSES—POLLUTION—SEWERAGE EFFLUENT—CONTINUING NUISANCE —INJUNCTION—MULTIPLICITY OF SUITS.

Defendant village operated a sewerage disposal plant, the effluent from which was deposited in a river on which the plaintiff was a lower riparian owner. Such discharge at times produced a foul and offensive odor over the plaintiff's lands, and polluted the waters of the stream. *Held* that, as plaintiff had a right to the reasonable use of the river in its natural flow and purity, the injury was a continuing nuisance, and hence, though plaintiff might have an adequate remedy at law for the damages already suffered, equity would restrain the same to prevent a multiplicity of suits.

2. SAME—OTHER POLLUTIONS.

Where a river was polluted and discolored by the discharge of sewerage effluent, a lower riparian owner was not precluded from having such pollution restrained by the fact that the water was rendered foul by other pollutions before the effluent was discharged therein, since the offense is none the less because others may be contributing to the same result.

3. SAME—STATUTES.

Under Laws 1887, c. 609, and Laws 1888, c. 312, authorizing the village of White Plains to construct a sewerage system, the village was not empowered to pollute and discolor a river by the discharge of the effluent therein, to. the damage of lower riparian owners, as such authority was not expressly given by the statutes, or any such intention of the legislature indicated in the same.

Appeal from special term, Westchester county.

Action by Emily O. Butler and another against the village of White Plains to abate and restrain a continuing nuisance caused by the deposit of the effluent of defendant's sewerage in the Bronx river. From a judgment in favor of defendant, plaintiffs appeal. Reversed.

Argued before GOODRICH, P. J., and WOODWARD, HIRSCHBERG, JENKS, and SEWELL, JJ.

Alexander B. Crane (Willard Parker Butler, on the brief), for appellants.

H. T. Dykman, for respondent.

WOODWARD, J. The plaintiffs are the owners of the fee of certain real estate embracing a portion of the bed of the Bronx river below the village of White Plains. The defendant, acting under the provisions of chapter 609 of the Laws of 1887, and chapter 312 of the Laws of 1888, has constructed a permanent system of sewers, making use of the Powers method of precipitation. The disposal works have been constructed on the west bank of the Bronx river, about one mile below the village of White Plains, and about the same distance above the bridge which crosses the Bronx river at Fisher street in Hartsdale. The statute under which this work was undertaken provided for taking private property under the power of emi-

69 N.Y.S.—13

nent domain, and a strip of ground was taken by condemnation and otherwise about 20 feet wide, extending from the disposal works to a point some 3,000 feet distant, terminating at a point on the west bank of the river. A pipe has been laid in this strip of ground, the defendant acquiring merely an easement for this purpose, and the effluent of the disposal works is conducted through this pipe to the Bronx river, where it is mingled with the waters of that stream. It is not suggested that the defendant acquired any rights in the Bronx river; its entire claim to any right to deposit its effluent in the stream being based apparently upon an alleged estoppel, one of the original plaintiffs having been a party to some part of the condemnation proceedings by which the defendant secured the right of way to the banks of the stream. This plaintiff has since died, and his daughter has been regularly substituted; but the question does not appear to have been regarded of any consequence, and it may be dropped from further consideration, the defendant apparently resting upon its general right to avail itself of the stream to carry off the effluent, regardless of the rights of riparian owners below. The plaintiffs allege that this effluent is being daily discharged into the Bronx river; that it discolors the water, kills the fish, gives rise to unhealthy and offensive odors, pollutes and poisons the waters, rendering them unfit for agricultural and domestic purposes, and constituting a continuing nuisance, justifying the interposition of a court of equity. The defendant admits the construction of the works and the discharge of the effluent in the manner alleged in the complaint, such discharge being upon the premises of the plaintiffs, but pleads as defenses that "it has acted within its legal right, and in accordance with the laws of the state of New York, and the approval of the state board of health, and has not polluted the waters of the Bronx river"; that the village of White Plains, acting under the law and the sanction of the state board of health, has expended large sums of money, and that "one of the plaintiffs to this action, viz. Charles Butler, was the owner of certain property acquired by the defendant under the right of eminent domain for the purpose of such sewerage system, and had full knowledge and notice of all the acts of this defendant at the time of the acquisition of such property and the construction of the works hereinbefore referred to," and "that the waters of the Bronx river, prior to the construction of such disposal works, both above and below such disposal works, now are, and for many years last past have been, impure, foul, and unfit for domestic use; that the natural drainage of the various brooks, streams, and streets runs into the Bronx river above such disposal works, and that the action of the defendant in the construction, maintenance, and operation of its sewerage system has in no way polluted or made the waters of the Bronx river unfit for use; or a nuisance in any respect; and that the property interests of the village of White Plains, and the health of its inhabitants, are dependent upon the sewerage system being kept, maintained, and used as it has been and is now being used, in accordance with law." When this cause came on for trial, the defendant moved for an adjournment on the ground that one of the plaintiffs, Mr. Hitchcock, had

made a general assignment, and asked a sufficient time in which to bring in the plaintiff's assignee as party defendant, but this motion was denied upon the assurance of plaintiffs' counsel that no claim for money damages would be insisted upon, the relief desired being equitable. The trial court had under consideration much evidence, including expert testimony introduced by both parties, and came to a decision as follows:

"First. That the evidence in this case does not prove that the discharge of the effluent from the defendant's works has produced sickness, and that the testimony as to its probable future effect is wholly inconclusive. Second. That such discharge does produce at times a foul and offensive odor. over the lands of the plaintiffs. Third. That the waters of the Bronx river are made unfit for domestic and agricultural uses by other pollutions before they receive the effluent from the defendant's works; that such effluent adds to the discolorment and pollution of the waters of the stream. Fourth. That plaintiffs have an adequate remedy at law for the damage which it is claimed they have suffered. A judgment in favor of the defendant in accordance with this decision will be signed."

The plaintiffs duly excepted to the decision, and upon this appeal urge that they are entitled to a mandatory injunction restraining the defendant from maintaining this nuisance, which is alleged to be "in accordance with law." While it may be that the "plaintiffs have an adequate remedy at law for the damage which it is claimed they have suffered" up to the present time, we are forced to conclude, from the decision of the court and the attitude of the defendant, that the grievance complained of is a continuing nuisance, and that it is the duty of a court of equity to grant relief. The court finds a state of facts constituting a nuisance (High, Inj. §§ 772–774), and the defendant asserts a right to continue to discharge the effluent upon the premises of the plaintiffs because the village of White Plains is "dependent upon the sewerage system being kept, maintained, and used as it has been and is now being used, in accordance with law." The court finds "that such discharge does produce at times a foul and offensive odor over the lands of the plaintiffs," and "that such effluent adds to the discolorment and pollution of the waters of the stream," and the courts have held that, to warrant an injunction against odors and gases from an offensive business, it is not necessary that the odors should be noxious, and, if they are so offensive and disagreeable as to render life uncomfortable, equity may interfere. And the fact that the nuisance recurs only when the wind is in a given direction, or that the nuisance complained of is surrounded by other nuisances, does not deprive plaintiffs of their right to relief. High, Inj. (2d Ed.) § 774, and authorities cited. Every day that this nuisance continues, the plaintiffs must suffer some measure of damage; and it is one of the elements of equitable jurisdiction that it shall interpose to prevent a multiplicity of actions, and this appears to us peculiarly within the rule. It may be at present, while the lands involved are comparatively unoccupied, that the damage sustained is merely nominal; but the courts will hardly close their eyes to the fact that lands within one mile of a railroad station, within a radius of fifteen miles of the city of New York, if free from nuisances, are destined to become the abodes of men; and,

even if the damages are slight, where the act complained of is such that, by its repetition or continuance, it may become the foundation or evidence of an adverse right, a court of equity will interpose by injunction. Strobel v. Salt Co., 164 N. Y. 303, 323, 58 N. E. 142, and authorities there cited. In the principal case the rule is laid down that:

"A riparian owner is entitled to a reasonable use of the water flowing by his premises in a natural stream, as an incident to his ownership of the soil, and to have it transmitted to him without sensible alteration in quality or unreasonable diminution in quantity. While he does not own the running water, he has the right to a reasonable use of it as it passes by his land. As all other owners upon the same stream have the same right, the right of no one is absolute, but is qualified by the right of the others to have the stream substantially preserved in its natural size, flow, and purity, and to protection against material diversion or pollution. This is the common right of all, which must not be interfered with by any. The use by each must, therefore, be consistent with the rights of the others, and the maxim of 'Sic utere tuo' observed by all. The rule of the ancient common law is still in force: 'Aqua currit et debet currere ut currere solebat.'"

This being the law as to riparian owners, it is certain that the defendant, whose claim to title extends only to the bank of the stream, cannot be in a better position, and it owes these plaintiffs the duty of refraining from the pollution of the Bronx river above or upon their premises. "Where the natural and necessary result of the place selected and the method adopted by an upper riparian owner in the conduct of his business is to cause material injury to the property of an owner below, a court of equity will exercise its power to restrain, on account of the inadequacy of the remedy at law, and in order to prevent a multiplicity of suits." Strobel v. Salt Co., supra.

The suggestion of the respondent, acted upon by the court below, that "the waters of the Bronx river are made unfit for domestic and agricultural uses by other pollutions before they receive the effluent from the defendant's works," has no bearing upon the case when considered in connection with the further finding that "such effluent adds to the discolorment and pollution of the waters of the stream," and is fully met by the Strobel Case, where the court quotes the rule that:

"Where there is a large number of persons mining on a small stream, if each should deteriorate the water a little, although the injury from the act of one might be small, the combined result of the acts of all might render the water utterly unfit for further use; and, if each could successfully defend an action on the ground that his act alone did not materially affect the water, the prior appropriator might be deprived of its use, and at the same time be without a remedy." Page 322, 164 N. Y., and page 148, 58 N. E.

See authorities cited.

The fact is that the defendant is polluting this stream; is using it in a manner inconsistent with the rights of the plaintiffs as lower riparian owners; and its offense is none the less because others may be contributing to the same general result. This, instead of preventing relief, may require it. Strobel Case, supra. In the recent case of Knitting Co. v. Dean, 162 N. Y. 278, 56 N. E. 757, it was alleged that the defendants had obstructed the stream on which the plaintiff had lower riparian rights, and, although it was found

that the damages sustained by the plaintiff by reason of the act of the defendants was merely nominal, a judgment was entered restraining the defendants from continuing the obstruction, and this judgment was sustained on appeal, the court holding that it is well settled that, where the act complained of is such that by its repetition or continuance it may become the foundation or evidence of an adverse right, a court of equity will interpose by injunction, though no actual damage is shown or found.   See, also, Rubber Co. v. Rothery, 132 N. Y. 293, 296, 30 N. E. 841; Mann v. Wiley, 51 App. Div. 169, 64 N. Y. Supp. 589.

The contention of the respondent that it has gained the right to commit this nuisance upon the premises of the plaintiffs by virtue of the act of the legislature and the approval of the state board of health is not supported by the authorities cited, the rule being well established that the statutory authority which will justify injury to private property and afford immunity for acts which would otherwise be a nuisance must be express, or must be a clear and unquestionable implication from powers expressly conferred, and it must appear that the legislature contemplated the doing of the very act which occasioned the injury.   Bohan v. Gaslight Co., 122 N. Y. 18, 27, 25 N. E. 246, 9 L. R. A. 711.   There is nothing in the statute to which our attention is called which indicates any intention on the part of the legislature to work this wrong upon the riparian owners of property upon the Bronx river or any other stream, and it is hardly the province of this court to give such effect to general language providing for the construction of a sewer system.   This case, it seems to us, comes within the general rule which gives to a person injured by the pollution of air or water, to the use of which, in its natural condition, he is entitled, an action against the party, whether it be a natural person or a corporation, who causes that pollution (Chapman v. City of Rochester, 110 N. Y. 273, 277, 18 N. E. 88, 1 L. R. A. 296; Const. art. 8, § 3); and, while the power of the court should not be exerted oppressively, it should yet be put in motion so far as is necessary to preserve the rights of these plaintiffs. The defendant, like a natural person, is within the reason of the rule that every man must so use his own property as not to injure that of his neighbor, and the fact that it has a large investment, and that it is conducting itself lawfully upon its own premises, does not change the rule, nor permit it to permanently prevent a material portion of the water of a natural stream from flowing over the land of a lower riparian owner, or to so pollute the rest of the stream as to render it unfit for ordinary use.   Strobel v. Salt Co., supra.

The judgment should be reversed, and a new trial granted; costs to abide the final award of costs.   All concur.