TALLMAN *v.* METROPOLITAN E. R. CO. *et al.*

(*Common Pleas of New York City and County, General Term.* June 4, 1888.)

HORSE AND STREET RAILROADS—ELEVATED RAILROADS—ABUTTERS—MEASURE OF DAMAGES.

In an action for damages to abutting property, caused by the construction of an elevated railroad along a street, the measure of damages is the difference between the rental value of such property with and without the railroad between the date of its building and the commencement of the action, and evidence of the surrounding circumstances, the disastrous effect of the railroad on the street, the depreciation of land in the vicinity, and the suspension of building on the street caused by the railroad, is admissible on the question of damages, when such property is unoccupied, and hence has no rental value.[1]

Appeal from trial term; VAN HOESEN, Judge.

Action by Jacob B. Tallman against the Metropolitan Elevated Railroad Company and the Manhattan Railway Company, for damages caused by the construction of an elevated railroad along the street in front of plaintiff's lots. Judgment for plaintiff, and defendants appeal.

Argued before LARREMORE, C. J., and DALY and ALLEN, JJ.

*E. S. Rapallo,* for appellants. *James M. Smith,* for respondent.

ALLEN, J. This is an appeal from a judgment entered on a verdict in favor of plaintiffs, and from an order denying a motion for a new trial. This action was for damages to the plaintiff's premises, which consisted of four vacant lots of land on the north side of Fifty-Third street, in the city of New York, alleged to have been caused by the construction and maintenance of an elevated railroad by the defendants in front of said lots and upon the street. The plaintiff acquired the said lots in 1866 and 1868, and continued to be the owner of the same until 1886. This action was commenced on the 21st day of April, 1884. The defendants complained that the judge at trial term laid down an erroneous rule as to the measure of damages. This was the only question discussed before us upon this appeal, and it is the only one we are called upon to decide. The action was tried upon the principle established in the case of *Uline* v. *Railroad Co.,* 101 N. Y. 98, 4 N. E. Rep. 536; the damages being limited to the period between the building of the railroad in 1878 and the commencement of the action in 1884. The wrongful acts complained of, and its liability for damages, were not disputed by the defendants, but it is insisted that recovery could be had only for the depreciation in the annual rental values for the years between 1878 and 1884. The defendants contend that the measure of damages administered by the court rested wholly upon

———

[1] As to the right of owners of abutting property to recover damages for injuries thereto caused by building a railroad in the street, and the measure of damages in such cases, see Thompson v. Railroad Co., (N. J.) 14 Atl. Rep. 897, and note; Jewett v. Railroad Co., 1 N. Y. Supp. 123.

hypothesis. An examination of the case does not support this claim. The correct rule of damages in such case as this is the difference in value of the use of the plaintiff's lots, without the elevated railroad and with it, between the date of the building of the same and the commencement of the action; the damages recoverable being the pecuniary loss which the trespass had caused the plaintiff in the use and enjoyment of his property when the suit was commenced. This rule is in harmony with the authorities. We do not think it has been violated by the trial court in this case. The property, which is the subject of this action, is vacant lots in a part of the city where the renting of lots without buildings upon them is unknown, and where vacant lots have no recognized rental value. In view of this the plaintiff was allowed to show the surrounding circumstances, the disastrous effect of the railroad upon the street, the depreciation of land in the vicinity of plaintiff's lots caused by the railroad, and the suspension of building in the street, for the purpose of showing whether the lots might have been put to profitable uses if the defendant's road had not been built in front of them, and then the court left it to the jury to determine the amount of the difference of the value of the use of the lots with the nuisances of the railroad, and the value of that use without these nuisances, during the period sued for. The owner of the land, whose easements of light, air, and freedom of access have been infringed upon by the wrongful acts of a trespasser, is not without remedy because his land is so located that it has no rental value capable of proof. He is entitled to recover what the jury may estimate upon the evidence to be the fair compensation for the interference with the use and enjoyment of his property. In *Drucker* v. *Railway Co.*, 106 N. Y. 164, 12 N. E. Rep. 568, it is said: "It is often the case that damages cannot be estimated with precision, and the basis of accurate calculation is wanting and inadequate. Such evidence as can be given should be given, and the facts naturally tending to elucidate the extent of the loss should not be withheld. But when all the proof, which in the nature of the case is only possible, has been given, the good sense of the jury must provide the answer, and it is no defense to a wrong-doer that the judgment against him must involve more or less of estimate and opinion, having very little to guide it." The rule of damages in this case is thus stated in the charge of the judge: "In this case you cannot ask what would these lots bring if sold before the road was built, and what afterwards, and then award the difference between these two sums as the amount of the plaintiff's damages. Your measure of damages must be altogether different. You must ask yourselves, how much less was the use of the lots worth in 1878, in 1879, in 1880, in 1881, in 1882, in 1883, and in 1884, in consequence of the nuisances of the elevated railroad? If those nuisances had not existed, what use could have been made of the lots, and what would that use have been worth? With those nuisances, as they actually existed, what use could be made of the lots, and what was the use worth? What is the amount of the difference between the value of the use of the lots with those nuisances and the value of that use without those nuisances? That difference you may award, if you think fit, as the plaintiff's damages. If we are deprived of the use and enjoyment of a thing by the wrongful act of another, who puts us in such a position that we can make no use of it, we are entitled to damages, even though we are unable to prove that the use of the thing had an ascertained market value. If the nuisances of the road prevented Tallman from making use of the lots; if he could not let them vacant; or if he could not get a fair return upon his investment if he improved them; if, in a word, he lost the use of them,—it is for you to say how much he is entitled upon the evidence to recover for the loss of such use. But you are also to take into consideration the fact that he used the premises for a carpenter's shop." This cannot correctly be said to be a direction to the jury that the plaintiff was entitled to recover damages which would have been inflicted if he had built houses upon his lots. It is

nothing more than to ask the jury to estimate, upon the facts proved, the injury to the plaintiff's use of his property. The jury was told: "In the first place, the rental value of the lots in their unimproved condition would be the measure of damages. If the property was not called for, if there was no rental in its vacant condition, then there are other elements that may be taken into consideration by you for the purpose of ascertaining the damage that Mr. Tallman sustained: and for that reason I have allowed evidence respecting the neighborhood, the kind of houses that were built in that block, what rents were obtained, what lots around there sold for, how many vacant lots there were in that locality, what it had cost to build such houses as were near by, and what effect the construction and operation of the road had upon the erection of new buildings, and upon the outlook for new buildings. This was intended to give you an idea of the value of the use of the lots, and may be resorted to if you find that the lots had no rental value. If we are deprived of the use and enjoyment of our property by the wrongful acts of another who puts us in such position that we can make no use of it, we are entitled to damages. In determining the amount you will take into consideration all the facts." There is not to be found in the charge anything that can be construed as an instruction that the jury might imagine what the value of the property might be if alterations and improvements that might be conceived of should be made, and that such imaginary value should be considered in arriving at their verdict. Such an instruction would have been erroneous, because it would have permitted speculative damages,—damages estimated upon an hypothetical case, and not upon existing facts. In the case of *City of Jackson* v. *Lambert*, 62 Ill. 519, to which the counsel for the appellant has referred, there was no evidence of the value of the land, or of the price at which it could be sold, nor was there any evidence that a purchaser could have been found. It was held that in the absence of proof it was erroneous to indulge in conjectures as to those points, and to make these conjectures the basis of an assessment of damages; and the large damages awarded in that case were declared to be excessive, and "without the least semblance of reason." In the case of *Hatfield* v. *Railroad Co.*, 33 N. J. Law, 251, the land on which the railroad trespassed was occupied by the plaintiff as a lumber-yard. The court held that as there was no evidence that the land could have been used more profitably for other purposes, and as there was no evidence that the property had diminished in value in consequence of defendant's trespass upon it, the mere speculation that the property might have been more profitably used if the trespass had not taken place, would not warrant an award of damages for anything more than for the ascertained loss and inconvenience to the plaintiff's lumber business. The court said: "Mere speculation as to what would have been the case under a different state of facts could never be ground for a legal appraisement of damages." In the case of *City of Chicago* v. *Huenerbein*, 85 Ill. 594, where five or six acres of land had been overflowed, the court held that the plaintiff could not recover damages for the imaginary loss of a crop of potatoes that he had never planted, but which it was possible that he might have planted, and on which he might have made money if everything could have turned out in accordance with his hopes. In the case at bar everything necessary to enable the jury to estimate the damages upon existing facts, and not upon conjecture or speculative opinions, was in evidence; and if the lots had no rental value, then, upon these facts, the jury could estimate the plaintiff's loss. It is possible that they were influenced by the consideration that the railroad prevented the improvement of the property, and compelled the plaintiff to keep the lots vacant, but that seems to us not to be erroneous. The judgment and order should be affirmed.

LARREMORE, C. J., and DALY, J., concurred.