SIMON SCHRIVER, Respondent, *v.* THE VILLAGE OF JOHNSTOWN, Appellant.

*Pollution of a private pond by a municipality — sewage — injunction — measure of damages — damages incapable of precise ascertainment.*

The maintenance, by a municipality, of a permanent system of sewers, through which the sewage is collected and emptied into a private owner's pond, upon a natural stream, not only polluting the water but causing a large deposit of offensive matter in the pond, continued ever since the completion of the sewers, presents a case for a perpetual injunction, with at least nominal damages.

The measure of damages in such a case is the depreciation in rental value.

In an action brought to recover damages for a pollution of the plaintiff's waters, where it appears that the pollution and consequent depreciation in rental value are produced in part by other causes than the act of the defendant, and the damages are incapable of precise ascertainment, but all the evidence bearing on the question of damages which in the nature of the case is fairly possible has been given, it is no defense to the defendant, the wrongdoer, that the judgment against him must involve more or less of estimate and opinion.

APPEAL by the defendant, the Village of Johnstown, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of Fulton county on the 28th day of September, 1892, upon the report of a referee.

The action was brought to recover damages alleged to have been sustained by the plaintiff by reason of the construction and maintenance of certain sewers by the defendant, the Village of Johnstown, whereby the waters of a natural non-navigable stream in plaintiff's land, and of a mill pond formed by a dam in the stream, upon which the plaintiff maintained a leather manufactory, were polluted and rendered unfit for use, and to perpetually restrain the defendant from emptying sewage and other offensive matter, and from draining any portion of the village of Johnstown, into the stream at any point upon or above the plaintiff's land.

The judgment imposed the perpetual injunction prayed for, and awarded the plaintiff $2,000 damages.

The method pursued by the referee, in arriving at the amount of damages, is set forth as follows in his opinion :

" We think the only measure of damages which can be used is depreciation of rental value. And as to this, it is very difficult to determine to what extent it is attributable to the defendant. The

defendant can be charged only with that part of the injury occasioned by its own wrong. (*Chipman* v. *Palmer*, 77 N. Y. 51.)

"And here are several sources of this depreciation. The filling up of the pond is contributed to by much sand and other substances brought down by the current, by surface drainage, by bran and other refuse from the mills, etc. . The filthy contents of the water interfering with plaintiff's business do not come wholly from sewers, but in part from privies, mills, surface drainage, etc., without connection with those sewers. A part of the depreciation in rental value is due to the pollution of the water, rendering it and the ice formed upon it unfit for domestic use, as we have seen, and under circumstances which eliminate it from the case on the question of damages.

- " Still, when it is reasonably certain that the defendant has caused injury to the plaintiff, it is the duty of the court to arrive at the amount of damages, although its judgment is an estimate and certainty is impossible. (*Drucker* v. *Manhattan Railway Co.*, 106 N. Y. 157.)

" The result of our examination of the question is that the total depreciation in rental value since the introduction of the sewers in 1882, may be fairly estimated at $600 per annum. From this should be deducted for domestic purposes, ice, etc., $300, leaving $300 per annum. One-third of this may be regarded as due to causes for which the defendant is not responsible. Upon this basis we find the damages to be at the rate of $200 per annum, which, for the years elapsed since defendant introduced its sewers, gives a total of $2,000 damages against the defendant."

*J. Keck* and *Matthew Hale*, for the appellant.

*Andrew J. Nellis*, for the respondent.

Putnam, J. :

The learned referee has written a very satisfactory and exhaustive opinion, on which I think the judgment should be affirmed. On competent and sufficient evidence he has found that the defendant, in June, 1882, completed a permanent system of sewers and gutters in the streets of the village of Johnstown, through which the sewage of said village was collected and emptied into plaintiff's pond, not

only polluting the water, but causing a large deposit of offensive matter therein. That ever since said period the flow of said sewage onto plaintiff's premises has continued.

Such being the facts of the case, I think the plaintiff was entitled to the judgment awarded of a perpetual injunction, and to at least nominal damages. (*Noonan* v. *City of Albany*, 79 N. Y. 477; *Stoddard* v. *Village of Saratoga Springs*, 127 id. 261.)

The only damages allowed by the referee are for the diminution of the storage capacity of plaintiff's pond, caused by the deposit therein of the contents of defendant's sewers, and the destruction of his machinery, and the consequent injury to his business. The referee determined that such deposit depreciated the rental value of plaintiff's premises $200 a year.

The depreciation in the rental value of plaintiff's premises, however, was shown on the trial to be attributable to several causes. The pollution of the water, for which no damages were allowed by the referee; the natural surface drainage of the village of Johnstown; the drainage of other mills; the contents of private sewers, privies, etc., together with defendant's sewage, produced such depreciation. There is no evidence showing, with any degree of certainty, the amount of the deposit in plaintiff's pond, caused by defendant's sewers, and the amount produced by other causes, or to what extent the rental value of plaintiff's premises is diminished by acts of defendant.

As the referee very properly suggests : " His (plaintiff's) damages, occasioned by the defendant, are difficult of measurement, and, indeed, the evidence does not furnish means of ascertaining them with precision."

The serious question of the case, and one on which I entertain considerable doubt, is whether the evidence was sufficient to justify the finding of the referee as to the amount of plaintiff's damages. It is urged that, without any evidence showing the amount of deposit in the pond caused by defendant, and the quantity left there by other sewers, the conclusion of the referee as to the amount of the diminution of the rental value produced by defendant is founded on mere conjecture. It must be admitted that there is some plausibility in this position. But there are well-considered authorities which seem to sustain the view of the learned referee.

*Drucker* v. *Manhattan Ry. Co.* (106 N. Y. 156) was an action brought against the defendant for damages for interfering with plaintiff's easement in a street. The damages allowed were the diminution of rental value of plaintiff's property. The evidence tended to show that such diminution was caused by defendant's road, and also by a tendency of the business to move "up-town." In the opinion, the following language is used : "It is often the case that damages cannot be estimated with precision and the basis of accurate calculation is wanting and inadequate. That is notably true in many cases of personal injuries. Such evidence as can be given should be given, and facts naturally tending to elucidate the extent of loss should not be withheld. But when all the proof which, in the nature of the case, is fairly possible has been given, the good sense of a jury must provide the answer, and it is no defense that such judgment involves more or less of estimate and opinion, having very little to guide it. That criticism has no force in the mouth of the wrongdoer when all reasonable data have been furnished for consideration."

The same doctrine is held in *Tallman* v. *Met. El. R. Co.* (2 N. Y. Supp. 130, 131). In *Van Steenburgh et al.* v. *Tobias* (17 Wend. 562, 563), Judge COWEN holding that a joint action does not lie against the separate owner of dogs by whom the sheep of a third person have been killed, says : "The difficulty in accurately estimating the separate injury done by each dog, is not an argument of sufficient strength to warrant the injustice of punishing a man who is entirely innocent. *The jury must in this, as in most cases of wrong, get at the real damages in the best way they can.*"

In a similar action (*Buddington* v. *Shearer*, 20 Pick. 477–479), it was held : "There may be some difficulty in ascertaining the quantum of damage done by the dog of each, but the difficulty cannot be great. If it could be proved what damage was done by one dog, and what by the other, there would be no difficulty; and on failure of such proof, each owner might be liable for an equal share of the damage, if it should appear that the dogs were of equal power to do mischief and there were no circumstances to render it probable that greater damage was done by one dog than by the other."

The same doctrine is held in *Auchmuty* v. *Ham* (1 Den. 495), and in *Partenheimer* v. *Van Order* (20 Barb. 479).

It follows, that in actions like the one we are considering, as in those for personal injuries, where all the evidence bearing on the question of damages "which in the nature of the case is fairly possible" has been given, it is no defense to the wrongdoer that the judgment against him must involve more or less estimate or opinion. In this case the evidence given on the trial was voluminous, and all the facts bearing on the question of damages, *as far as possible*, seem to have been brought out, and I think, under the authorities cited, the conclusion of the referee was warranted by the evidence, and, therefore, that the judgment should be affirmed.

MAYHAM, P. J., and HERRICK, J., concurred.

Judgment affirmed, with costs.

---

In the Matter of the Application for a Peremptory Mandamus to Issue to JAMES H. MANNING, Mayor of the City of Albany, Requiring him to Cause to be Published, as by Law Required, the List of Inspectors and Poll Clerks Selected and Appointed by the Board of Election Commissioners of the City of Albany.

*Special Terms at Chambers — jurisdiction of, to issue a writ of peremptory man-damus — minority member of a board of election commissioners.*

An order to show cause why a writ of peremptory mandamus should not issue was made returnable at a Special Term to be held at Chambers, and upon the return of such order objection was taken that a Special Term at Chambers had no jurisdiction to issue a writ of mandamus; the objection was overruled and the mandamus was granted.

*Held*, that the writ of mandamus was improperly granted. (PUTNAM, J., dissenting.)

*Held*, that such mayor was the minority member of the board, and as such was entitled to appoint one set of such inspectors of election.