(68 Misc. Rep. 236.)

## LAWATSCH et al. v. CITY OF KINGSTON.

(Supreme Court, Special Term, Ulster County. June, 1910.)

1. MUNICIPAL CORPORATIONS (§ 838*)—POLLUTION OF STREAM—NUISANCE.

A nuisance was created where the discharge by a city of sewage into a stream which passed over the dam and water wheel of a gristmill created such a stench that it was with difficulty at times that the mill owners could operate their mill.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1772–1795; Dec. Dig. § 838.*]

2. MUNICIPAL CORPORATIONS (§ 846*)—NUISANCE—DAMAGES.

The measure of damages in such case is the diminution in the rental value of the mill with the nuisance created by the city from what it was before.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1772–1795; Dec. Dig. § 846.*]

3. MUNICIPAL CORPORATIONS (§ 846*)—NUISANCE—DAMAGES—AMOUNT—DETERMINATION.

The court is not precluded from fixing such reasonable damages as may seem just caused by pollution of a stream, where a full inquiry has been had, because damages are difficult of ascertainment with exactness by reason of other causes contributing to defilement of the stream.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1772–1795; Dec. Dig. § 846.*]

4. MUNICIPAL CORPORATIONS (§ 846*)—INJUNCTION—PERSONS ENJOINABLE.

Plaintiff is entitled to an injunction against the city for the pollution of a stream, though sewage from other sources contributed to the nuisance.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1772–1795; Dec. Dig. § 846.*]

5. MUNICIPAL CORPORATIONS (§ 846*)—NUISANCE—INJUNCTION—DECREE.

A decree enjoining a city from polluting a stream by sewage may be suspended from operation for one year with the right of the court, for sufficient cause shown, to further postpone operation of the injunction for such reasonable time as may to it seem proper, provided relief by the city is not had within one year by a change of system or by legislation.

[Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. § 846.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Action by Anthony H. Lawatsch and another against the City of Kingston. Judgment for plaintiffs.

Brinnier & Searing and Frederick Stephan, Jr., for plaintiffs.
Philip Elting and Frederick E. W. Darrow, for defendant.

BETTS, J. This is an action brought by the plaintiffs, as owners of certain land, mill property, and water rights upon the Twaalfskill stream in this city against the city of Kingston for its pollution of said stream by causing a discharge from a septic tank upon the Second and Ninth ward sewers of said city, and also the so-called Jacob's Valley sewer, to pass into said stream and upon the premises of plaintiffs and through their dam and over their water wheel, and for an injunction restraining the city from so emptying said sewers and. for the damages for the injury already done to the plaintiffs' property.

The plaintiffs allege that such discharge of said sewage into the Twaalfskill stream is a nuisance to their property. While the fact of said Second and Ninth ward sewers being a nuisance as now and for some time operated is not admitted by the city, yet it cannot well be denied. The proof is abundant and unmistakable that it is with difficulty at times that the plaintiffs can operate their mill, on account of the unbearable stench created by the waters passing through this stream and over their overshot water wheel, which waters run through said Twaalfskill stream from said septic tanks to the Rondout creek, an arm of the Hudson river.

I find that it is a nuisance.

The plaintiffs bought this property on the 13th day of April, 1905. They improved the mill property since they owned it and added to the machinery and used it as a gristmill and intended to use it for a cider mill. They have their cider mill machinery installed, but have as yet been unable to use it to any great extent on account of the nature of the water passing through the mill property.

The question as to the amount of damages is not free from difficulty under the proof submitted. The amount of damages to which the plaintiffs are entitled is the diminution in the rental value of said premises with the nuisance created by the city or as it would be without that nuisance. Francis v. Schoellkopf, 53 N. Y. 152. The damage, as stated by the court on page 155, is as follows:

"There was no error in the rule of damages laid down by the judge. This was the difference of the rental value, free from the stench and subject to it."

See, also, Schriver v. Village of Johnstown, 71 Hun, 232, 24 N. Y. Supp. 1083, and Gerow v. Village of Liberty, 106 App. Div. 357, 94 N. Y. Supp. 949.

It was shown by the defendant that other causes contributed to the defilement or pollution of the Twaalfskill stream. Certain parties had their closets either upon the stream or connected therewith, and there was, of course, some question as to the extent of the pollution these closets occasioned. The court is not, however, where a full inquiry has been had as in this case, prohibited from fixing such reasonable damages as to it may seem just because such damages are difficult of

ascertainment with exactness. A very similar case is the above-noted case of Schriver v. Village of Johnstown, 71 Hun, 232, 24 N. Y. Supp. 1083, affirmed on opinion of the General Term in 148 N. Y. 758, 43 N. E. 989. There was much the same sort of conditions existing there as in this case, except that the pollution contributed by other parties there was much greater than is contributed by parties other than the city of Kingston in this case. Apparently whatever pollution was thus contributed in this case was slight and had very little or no apparent effect upon the stream prior to the installation of these Second and Ninth ward sewers. Drucker v. Manhattan Railway Company, 106 N. Y. 157, 12 N. E. 568, 60 Am. Rep. 437.

From all of the evidence taken before me, from the value of the plaintiffs' premises, from the amount that they have expended thereon in improving the same, I think that the fair rental value of the property before the pollution thereof by the sewage from the Second and Ninth ward sewers was $600 per annum, and after such pollution was $360 per annum; due regard being had to whatever slight injury was done by the acts of other small contributors to the nuisance and also taking into consideration the increased water supply occasioned by the sewers.

I have not neglected to consider the fact that several well-informed citizens have testified on behalf of the city that in their opinion the property was not injured by the construction of these sewers; some of them, in fact, testifying that in their opinion the rental value was increased by the construction of the Second and Ninth ward sewers owing to the increased amount of water that was thereby taken from the Sawkill stream which supplies the city of Kingston with water and transmitted down through the Second and Ninth ward sewers finding its way eventually to and over the plaintiffs' water wheel. Nevertheless an examination of their testimony shows that with a single exception or two these citizens had no knowledge of the improvements that were placed upon this property by the plaintiffs; nor the extent of the machinery in said mill operated by the plaintiffs, nor the extent of the business done by them. It was simply and so testified to by the parties, their testimony principally from an outside cursory examination from passing along the street, or from knowledge of the property acquired many years ago.

I therefore hold that, as to the damages, the plaintiffs are entitled to recover against the city at the rate of $240 per year from April 13, 1905, to the date of the entry of judgment.

As to the injunction asked for, testimony was given by the city of Kingston showing that an effort was being made to carry this sewage from the disposal plant to the Rondout creek through a conduit or sewer to be constructed by the city of New York, that was likely in time to meet with success, although nothing definite had yet been accomplished as to the time when, if at all, the sewage would be so disposed of. Under the decisions the plaintiff is entitled to an injunction here. Sampson Sammons v. City of Gloversville, 34 Misc. Rep. 459, 70 N. Y. Supp. 284, and see the cases therein cited; Id., 67 App. Div. 628, 74 N. Y. Supp. 1145; Id., 175 N. Y. 346, 67 N. E. 622;

Willard S. Sammons v. City of Gloversville, 81 App. Div. 332, 81 N. Y. Supp. 466; Mann v. Willey, 51 App. Div. 169, 64 N. Y. Supp. 589, affirmed in 168 N. Y. 664, 61 N. E. 1131; Butler v. Village of White Plains, 59 App. Div. 30, 69 N. Y. Supp. 193.

In the Sampson Sammons v. Gloversville Case, the operation of the injunction was suspended for one year. See 34 Misc. Rep. 462, 70 N. Y. Supp. 284. Said injunction also contained the provision that the court at Special Term should have the right to farther postpone the operation of said injunction for such reasonable time beyond said year as may seem necessary for the obtaining of appropriate legislation, or the establishing of a different system of sewage for the said city of Gloversville.

I shall follow the practice followed in that case. The damages may be awarded as allowed here, and an injunction may be granted with the provision that it shall not be operative for one year from the time it is granted, and that the court at Special Term (sufficient cause being shown) may have the right to farther postpone the operation of such injunction for such reasonable time as to it may seem proper and appropriate provided relief by the defendant is not had within one year by a connection with the proposed sewer to be constructed by the city of New York or by legislation or by such other method as to the defendant may seem appropriate and to its advantage. The judgment should also provide for the payment to plaintiffs for the diminution of rental value during the time the injunction is suspended.

Judgment may be entered accordingly, with costs to plaintiffs.