## PEOPLE v. WATKINS.

(Supreme Court, Appellate Division, Second Department. December 31, 1897.)

CRIMINAL LAW—PREJUDICIAL EVIDENCE BROUGHT OUT BY DEFENDANT—NEW TRIAL.

Upon the trial of an indictment for arson, in which the case against the defendant was not strong, the defendant's own counsel called out, upon cross-examination of a witness for the people, incompetent testimony of great weight concerning an alleged attempt by defendant's brother, with which the defendant was not shown to have had any connection, to bribe the witness to leave the place, and not appear at the trial. To this testimony no objection was interposed, and defendant was convicted. *Held*, that the testimony was highly prejudicial to defendant, and under Code Cr. Proc. § 527, required the granting of a new trial.

Appeal from Rockland county court.

George Watkins was convicted of arson in the third decree, and appeals. Reversed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and BRADLEY, JJ.

Richard S. Harvey, for appellant.
Alonzo Wheeler, Dist. Atty., for the People.

HATCH, J. The defendant was indicted for the crime of arson in the third degree, in that on or about the 14th day of January, 1896, at the village of Nyack, in the county of Rockland, he did willfully and feloniously burn and set on fire a certain building owned by Tunis De Pew, and occupied by Melvina Thayer. The building claimed to have been fired by the defendant was a "shoddy factory," so called, in which, prior to the fire, the defendant had been employed as an engineer, and subsequently as a watchman, and in which, at the time of the fire, he had a lawful right to be. There is much incompetent testimony in the case, although none of it was objected to by the defendant, and some of the most damaging matters and statements connected therewith seem to have been elicited by his counsel. It would seem as if those engaged in the trial lost sight of the issue presented by the indictment, and spent much time upon the subject of the bribery of the main witness, in which court, coun-

sel, and jury took part, although it was not shown that the defendant had the slightest connection with the subject. We should say at this point that the learned district attorney who argues this appeal and the learned counsel for the defendant took no part in the trial. The evidence which was elicited upon the charge in the indictment consisted of the testimony of one Thomas Mayler, who gave evidence tending to establish that on the night of the fire he went with the defendant from Hefner's Saloon, where they had been drinking, to the factory; that the defendant spoke about going into the factory to get some belting leather; that thereupon the defendant left Mayler standing about 20 feet from the factory, and went around to the south side, saying that he would be back. Thereafter Mayler observed a person in the mill striking some matches and throwing them upon the ground floor. After about the lapse of 5 or 10 minutes he heard a crash of glass, and saw a man, who he thought was the defendant, come through a window, about 25 or 30 feet from where he stood, and run towards the river. Mayler called out, but the man made no reply. The witness then saw a glare of light upstairs. He then walked up Piermont avenue, met a hose carriage, and came back with it. On his return he found the defendant helping and giving orders to look out for the building. Mayler further testified that two or three weeks before he heard the defendant speak "about the burning of that building. I heard him [defendant] say on the corner to put a match on it to put it on the dump. Q. Put it on what,—the dump? A. The dump. Q. Did you say that he would put a match to it? A. To put a match to that joint, and put it on the dump." Further testimony was given by Thomas J. Curran, a member of the police force of the village of Nyack. His evidence was to the effect that the defendant stated to him that he went from Hefner's Saloon in company with Mayler to the dock upon which the factory stood; that he wanted a piece of belting leather to fix his shoes; that he left Mayler standing outside, and went into the factory through the upper way; that he lit a candle, and threw the match down among some rubbish,—paper stuff,—and also lit his pipe, and threw the match away; that this was on the second floor of the building, occupied by Mrs. Thayer as a paper-box factory. Mrs. Thayer testified that she occupied the place at the time of the fire, and manufactured paper shoe boxes, and that the fire destroyed a great deal of paper. She also testified that the defendant had no special right upon her floor; that the other part of the property could be entered without passing through her rooms. This constituted substantially all of the competent testimony given upon the part of the people tending to establish that the defendant was guilty of the offense charged in the indictment.

The defendant was called in his own behalf, and admitted that he entered the factory substantially as described by Mayler, for the purpose of obtaining some leather to use for soling and heeling his shoes. He claimed that the part of the building downstairs was nailed up, and that his only way of getting downstairs was through Mrs. Thayer's rooms; that he took a candle from the window sill, and struck a match as he went in to light the candle; that the first match went out, and

he struck another, and lit the candle, and started on his way to the engine room to get the leather; that he lit no more matches in the building, and after getting the leather he came back the same way, blew out the candle, put it away, fastened the door, and came out; that he did not then see Mayler, and immediately a flame broke out from some paper rubbish; that he then started to give an alarm. The fire was already discovered, and he came back with the fire department, and conferred with the chief, requesting that he should not wet the building more than was necessary to save it and the machinery. He denied stating that he threw burning matches in a bundle of papers, and claimed there was none where he threw the matches, and he denied that he set fire to the building.

The duty rested upon the prosecution to prove, by testimony competent for that purpose, that the defendant was guilty of the offense charged beyond a reasonable doubt. It is familiar law that the presumption is of innocence, and in order to overcome that presumption, and before guilt is deemed to be established, the evidence must be sufficiently cogent to exclude every reasonable hypothesis of innocence. It is quite evident that the case against the defendant is not strong. Whether it would support a verdict of guilty, if no prejudicial matter had entered into consideration, we are not now called upon to decide or to express an opinion thereon. It is sufficient now to say that it became the duty of the court to carefully guard the rights of the defendant, and to exclude all incompetent testimony and prejudicial matter, whether counsel for the defendant did or did not object. By section 527 of the Code of Criminal Procedure, we are required to order a new trial if "satisfied that the verdict against the prisoner was * * * against law, or that justice requires a new trial, whether any exception shall have been taken or not in the court below." We are therefore to examine this case with a view of determining whether the law has been complied with and justice attained.

Upon the cross-examination of Mayler, counsel for the defendant questioned him in regard to a conversation which he had with a brother of the defendant about paying him money to leave the place and not appear upon the trial of the indictment. Upon this subject Mayler was questioned at considerable length both by the counsel for the defendant and the district attorney, and, in effect, gave testimony that there was talk upon the subject, and that he negotiated with the brother because, as he expressed, "I thought he was going to put up a job to put me in jail, and I thought I would let him do it. * * * I led them on, to see what they were going to do." Upon this subject the brother was called, and gave testimony decidedly equivocal, the almost certain inference from which was that he had approached this witness with an offer of money if he would not appear at the trial. With respect to what transpired at a particular meeting, when this matter was a subject of conversation between the brother and Mayler, one Candilla was called as a witness, and disputed the statements of Mayler. He also gave evidence tending to show that Mayler was the person who made the proposal for money. Mayler denied ever meeting this witness, and the circumstances which

surrounded the occurrence, as described by him, cast much doubt and discredit upon this witness' statements. It is clear that this testimony was incompetent, and that its effect was highly prejudicial to the defendant. He was not shown to have had any knowledge of it, took no part in it, and, aside from the fact that it was his brother who negotiated, was not even remotely connected with it, but stood in the position of an entire stranger. The course pursued in connection with this matter injected into the trial an issue which was entirely aside of the charge which the defendant was called upon to meet, and from which an inference was almost necessarily created that there was ground to suppose that guilt existed where an attempt was made to spirit away a witness, and resort was had to bribery for that purpose. This is made all the more clear in this case, as the evidence leaves but little doubt that the attempt to bribe was made by the defendant's brother, and it is equally clear that the matter made a decided impression upon the court and jury, which could scarcely have been otherwise than prejudicial to the defendant. The court in its charge to the jury made no mention of the subject, and the jury retired in the undoubted belief that they had the right to consider the matter as bearing upon the guilt of the defendant. It is true that the defendant's counsel was responsible for this testimony. But this ought not to prevent our interference, if satisfied that such step is necessary to work justice. The court should protect against the mistake of the counsel for the party, as well as against the affirmative action of his adversary, if injustice be the result. Upon this ground we think justice requires the granting of a new trial.

The judgment and conviction should be reversed, and a new trial granted in the county court of Rockland county. All concur.