PEOPLE v. PELTON et al.

(Supreme Court, Appellate Division, Second Department. January 31, 1899.)

1. PUBLIC NUISANCE—LIABILITY—PRINCIPALS.
    Under Pen. Code, § 385, defining a public nuisance as unlawfully doing an act or omitting to perform a duty, thereby injuring, annoying, or endangering the repose, health, or safety of any considerable number of persons; and section 387, making the maintenance of such nuisance a misdemeanor,—a person who lawfully maintains a dam across a common water course within a city in such manner as to cause a public nuisance is liable, notwithstanding that the municipality has the control of the water course and the dam, and is bound to keep the water course clean.

2. SAME—CRIMINAL PROSECUTION—EVIDENCE.
    A verdict that a dam lawfully maintained across a common water course is a public nuisance is warranted by evidence that waste, refuse, and débris have lodged in the mill pond created by the dam, and that the latter prevents the scouring out of the bed of the pond, and, if it were removed, the water flowing through it would scour it; that the dam caused different heights of water, alternately covering and exposing parts of the bed of the pond, so as to cause a decomposition of animal and vegetable matter lodged therein, causing malaria and fever.

3. SAME—INSTRUCTIONS.
    One accused of committing a public nuisance by maintaining a dam across a water course in a city, under an agreement with the city, was not prejudiced by having the question of what duty with respect to the maintenance of the dam the agreement imposed on the city and accused, respectively, submitted to the jury, where they were also instructed that accused was not guilty if the agreement required the city to maintain the pond at the depth prescribed by the agreement, and that, by so maintaining it, no nuisance would have resulted.

4. SAME—ABATEMENT—NOTICE.
    A public nuisance caused by the maintenance of a dam and mill pond which the owner acquired may be abated without previous notice to him, where he continuously used it.

5. SAME—TIME OF CONTINUANCE.
    It may be abated without such notice even though it had been in use by the owner and his predecessors for 50 years, since continuous maintenance does not legitimate a nuisance.

6. SAME—CRIMINAL PROSECUTION—INSTRUCTIONS.
    It is fatal error, in a criminal prosecution for causing a public nuisance by creating a mill pond by the maintenance of a dam, to charge that, if the dam be removed, the jury will have to assume that the pond will be taken care of, since it authorizes the jury, in finding its verdict, to consider its effect.

Appeal from Dutchess county court.

John W. Pelton and others were convicted of maintaining a public nuisance, and they appeal. Reversed.

Argued before GOODRICH, P. J., and CULLEN, HATCH, and WOODWARD, JJ.

Frank B. Lown, for appellants.

George Wood (James L. Williams, on brief), for respondent.

GOODRICH, P. J. The Penal Code (section 385) declares that:

"A public nuisance is a crime against the order and economy of the state and consists in unlawfully doing an act, or omitting to perform a duty, which act or omission: (1) Annoys, injures or endangers the comfort, repose, health or safety of any considerable number of persons. * * *"

The defendants were indicted under this section for maintaining, in 1896, 1897, and 1898, a dam across the Fallkill creek, in the city of Poughkeepsie, where it empties into the Hudson river. The defendants were tried on this indictment, and the jury rendered a verdict of guilty, upon which a judgment was entered, adjudging that the defendants were guilty of maintaining a public nuisance, that they pay a fine of $250, and that, in default of such payment, they should be committed to the county jail; and, in addition to said fine, it was ordered that the nuisance set forth in the indictment be abated. From this judgment the defendants appeal.

The dam in question was erected across the Fallkill creek by the ancestors of the defendants, more than 50 years ago, and the water power therefrom was used by them and by the defendants for their business of milling. Fallkill creek enters the city of Poughkeepsie at the eastern line, and flows through it to the western line. Many years ago there were four dams on the creek, known as Lent's, Parker's, Swift's, and Pelton's, the latter being the defendants' dam, and located at the place where the creek empties into the Hudson river. The pond proper, in which the defendants' dam impounds the waters of the creek, lies east of Mill and Delafield streets, and the defendants own the lands to the westward of said streets. Certain conveyances to them were offered in evidence, but only by name, and the description is not before this court, so that we have no evidence that these deeds conveyed to the defendants any legal title to the land under the waters of the pond. It was stipulated only that the defendants took title under these deeds to the lands west and south of Mill street. It is contended, however, by the prosecution, that the defendants have claimed and exercised the right of impounding the water of the creek, and for that purpose have an interest in or title to the pond. To the west of said streets the creek, after flowing into and through the pond, passes under the Mill Street Bridge, and narrows down to a neck known as the "Pool," which is about 50 or 75 feet in breadth. The defendants' dam is at the westerly end of this pool. Originally, when the dam was built, the pond was considerably larger than it is at present. It is now oval in shape, and extends, according to various estimates, some five or seven hundred feet east of the bridge, and is four or five hundred feet in width. In 1867 an act of the legislature was passed

for the introduction of water into the city. Provision was made for submitting the question to a vote of the citizens, and at the election there was a majority vote in favor of the introduction. The statute provided that, in case of such majority vote, the persons therein named should be water commissioners, who should have "the exclusive power, management, and control of getting the title to the waters of said Fallkill creek and its tributaries or other sources, if deemed necessary by them, and the control of the bed of the stream of said creek and of the ponds thereon, if deemed necessary by them." The commissioners were also authorized to acquire any land or water for the purpose of making service, "and to acquire the right also to control, regulate, or improve the bed of the said Fallkill creek and the ponds thereon," and for this purpose to apply for the appointment of commissioners to appraise the damages to the owners of the lands, waters, easements, and privileges. Under this provision, commissioners were appointed to appraise the damages sustained by the several mill owners, and awards were made to all four dam owners, the award to the defendants being $40,000, as compensation for the removal of their dam. The award, so far as the defendants were concerned, was not confirmed by the court, and negotiations ensued, which resulted in an agreement between the city and the defendants by which the payment of their award was waived by them, and a modified condemnation was agreed upon, under which the area of their pond was to be contracted, the dam left standing, and the defendants' damages reduced to $15,000. The same commissioners were appointed to make this award, and the sum last named was paid to the defendants. This agreement contained a recital that the defendants "have a claim to have an interest or interests or right or rights in and to the said pond and the maintenance of the same." The water commissioners also agreed to do the work of contracting the pond, walling it in, and filling the reclaimed part back of the retaining wall, and digging out the contracted part, so that it should have a depth of four feet, and to put a flood gate in the dam, with the right to hoist the gate when it should be necessary to clear the pond. The commissioners contracted the pond, built the retaining wall, and put in the flood gate. In addition to this, the commissioners walled up the waters of the creek through the entire limits of the city, to a uniform width of 30 feet, including the course of the creek over the bed of the three ponds from which the dams were removed. In 1884 it was found that the Pelton pond, as contracted, was filling up, and in a condition deleterious to the public health. The board of health obtained permission from the defendants to contract still further the area of the pond, without compensation, and the board walled in the newly-reclaimed portion, and cleaned out the part of the pond thus contracted. Since that time the pond has never been cleaned. The retaining walls of the creek have become somewhat impaired, and the creek, along many of its parts, has been used as an open sewer, into which various kinds of refuse are carried. Slaughter houses and privies exist along the banks. It is not singular that under these circumstances the flow of the stream and occasional

freshets has carried waste, refuse, and débris into the Pelton pond,
where they have lodged, partially filling the bed of the pond, diminishing the depth of the water, and forming a small island. It is not claimed that the defendants have contributed to this condition of affairs otherwise than by the maintenance of the dam, so as to prevent the regular and continuous flow of the water and consequent scouring out of the pond. There seems to be no complaint as to the condition of the pool below the bridge, owned by the defendants.

The people introduced evidence tending to show that the dam prevented the scouring out of the pond, and that, if it was removed, the water would scour the entire pond; that the use of the dam by the defendants in operating the mill caused different heights of water in the pond, so that the alternate covering and exposure of the bed gave rise to decomposition of vegetable and animal matter, causing malaria and fevers to persons living about the borders of the pond and in the vicinity; that malaria and fevers were more prevalent in that part of the city than in other parts; that the condition of the pond was a continual menace to the public health; and that at various times the surface of the water in the pond was one or two feet below the crest of the dam. There was also evidence to show that the deleterious condition of the pond arose from the fact that it was so filled with débris as to diminish its capacity for holding a large body of water; and that, if the pond was dredged out or kept clean, the danger to the public health would be decreased. The defendants, at the close of the prosecution, and also at the close of the case, moved that the jury be directed to find a verdict of acquittal, on the grounds, briefly stated, that the dam is a lawful structure, that there was no evidence that they used it unlawfully, or that it was the cause of the nuisance, or that they caused any accumulation of noxious matter in the pond, or that they have any title to the lands east of the bridge, or are owners of any lands bordering thereon. We think there was ample evidence warranting the submission to the jury of the main charge of the indictment, and that the propriety of such submission is not called into question by any of these grounds of motion.

The first contention of the defendants is that "the defendants are not liable as the committers of a nuisance." One of the grounds of this contention is that by the provisions of the water act of 1867, as amended by chapter 158 of the Laws of 1870, the board of water commissioners has the entire control and custody of the pond and the whole of Fallkill creek, and that it has the power and it is its duty to clean and keep the pond clear, without reference to the agreement with the defendants, and that, if the board exercises properly its functions, the dam and pond will not constitute a nuisance. Assuming all of this to be true, it affords no immunity to the defendants, provided either the maintenance of the dam or the method of its use causes a public nuisance. At common law, in misdemeanors, there are no accessories; all concerned, whether instigators or perpetrators, being principals, and subject to indictment as such. Whart. Cr. Law (10th Ed.) §§ 223, 1422; U. S. v. Mills, 7 Pet. 138.

No failure of duty upon the part of the city in cleaning the pond

would afford a defense to the indictment, provided the maintenance of the dam contributed to the nuisance; much more if it was the cause thereof. The indictment charges the defendants with main· taining a dam across a common water course; that the dam prevents the natural flow of the creek, and causes a large body of water to accumulate in a pond; that defendants permit such conditions to exist, whereby the vegetable and animal matter in the pond are prevented from discharging into the river, and are so exposed by the alternate rise and fall of the water as to become decomposed and putrid, giving forth noxious substances, which corrupt the air. The court charged that the defendants had the right to maintain the pond, but that they must operate it so as not to maintain a nuisance, and that the question for the jury to decide was whether the dam caused an alternate raising and lowering of the water, and the exposure of portions of the bottom and sides of the pond, thereby causing the emanation of the noxious influences, and the accumulation of filth and offensive substances, and that, if they found this to be the fact, it was the duty of the defendants to keep the pond clean and safe, or dispense with the dam. Here was a fair submission of the question whether the deleterious condition resulted from the maintenance of the dam, and as there was evidence tending to show that, if the dam were removed, the flow of the waters of the creek, by reason of the grade and otherwise, would scour the bed of the stream, and keep it clear of refuse, the verdict of the jury may not be disturbed for that reason.

The defendants contend that it was error to instruct the jury that it was within their province to determine what duty as to the maintenance of the dam and pond was imposed upon the water commissioners and the defendants, respectively, by the terms of the agreement between them. This was undoubted error, as it was the duty of the court to pass upon the legal effect of the agreement; but we cannot see that any injury could result to the defendants, as the court charged that if the agreement provided that the city should maintain the pond at the depth required, and if they found that, had the pond been kept excavated to such depth, no deleterious conditions would have followed, the defendants could not be found guilty.

The defendants also contend that the judgment is erroneous because it orders the nuisance to be abated, which is equivalent to a judgment for its removal; and that the water acts of the legislature, and the awards of the commissioners to the defendants, and the latter's acceptance of the reduced award, constitute a legislative recognition of the owners' right to maintain their dam until fully compensated for taking it down. Wenzlick v. McCotter, 87 N. Y. 123, 127, is cited as authority for the necessity of notice to remove, but that is not the decision. The court held that, where a dam erected by a former owner of land had not been used by the new owner, notice to remove was essential. But in the present case the defendants had been using the dam continuously in their business. Nor does the fact that it had been in use for 50 years make any difference. No length of time legitimates a nuisance. The dam might have been no menace to the public health when constructed, or as it

was used by the ancestors of the defendants, or later by the defendants themselves; but, by change of population or other reasons, a thing not a nuisance in its inception may ultimately become one, and its simple maintenance would become a subject of indictment. Whart. Cr. Law (10th Ed.) § 1415.

A somewhat curious condition arose at the trial, when the jury returned to the court room with a question, and the following occurred:

" 'The Court: Gentlemen of the jury, have you agreed upon your verdict? Mr. Williams, the Foreman, to the Court: We would like to ask a question. It has been stated here that that [sic] if the dam is removed, the pond will be taken care of. We wish to know if that is so? The Court: You will have to assume that. The Foreman: Then we find them guilty.' After some colloquy between judge and jury in the absence of the stenographer, the clerk took down the following: 'Williams: It has been stated here that if the dam is removed, etc. The Court: —— Williams, to the Court: The jury will withdraw the question. Mr. Wilkinson: The jury cannot withdraw the question. It is a part of the record.' The jury then withdrew, and subsequently came into court with a verdict of guilty."

It was error for the court to answer that the jury would have to assume that public officials 'would do their duty, without also instructing them that the future action of officials had nothing to do with the case, and that their verdict must not be influenced thereby. It was the duty of the jury to consider what the evidence proved had been done, and that only, and not to speculate as to what might be thereafter done, or what would be the effect of a verdict upon the action of public officials; and, when this question disclosed the fact that they were taking such extraneous matter into consideration (as is very evident from their prompt action after the remark of the court), they should have been clearly instructed by the court as to their duty in that regard. This was not done, and we are satisfied that the remark of the court was calculated to, and did, affect the minds of the jurymen injuriously to the defendants. Although no exception was taken by the defendants' counsel to this charge, section 527 of the Code of Criminal Procedure states that "the appellate court may order a new trial if it be satisfied that the verdict against the prisoner was against the weight of evidence or against law, or that justice requires a new trial, whether any exception shall have been taken or not in the court below." This court arrived at a similar result, and reversed a judgment of conviction, in People v. Watkins, 23 App. Div. 253, 48 N. Y. Supp. 856. We are not satisfied that the defendants have had that fair trial which the law provides, and believe that justice requires a new trial. There are other questions which give rise to doubts in our minds as to the correctness of the charge and refusals to charge, but these we do not decide, as the errors already indicated render a reversal necessary.

The judgment must be reversed, and a new trial granted in the county court of the county of Dutchess. All concur.